BARRY COTTMAN,

1:19-cv-14122-NLH-AMD

        Plaintiff,

**OPINION**

    v.

JODY FARABELLA,
MILLVILLE CHIEF OF POLICE,
P.O. JOSEPH DIXON
172, P.O. ROBERT RUNKLE
160, CITY OF MILLVILLE, NEW
JERSEY,

        Defendants.

**APPEARANCES**:

JUSTIN TERENCE LOUGHRY
LOUGHRY & LINDSAY, LLC
330 MARKET STREET
CAMDEN, NJ 08102

    *On behalf of Plaintiff*

A. MICHAEL BARKER
BARKER, GELFAND & JAMES
LINWOOD GREENE
210 NEW ROAD
SUITE 12
LINWOOD, NJ 08221

    *On behalf of Defendants Jody Farabella and City of*
    *Millville*

THOMAS B. REYNOLDS
REYNOLDS & HORN, P.C.
A PROFESSIONAL CORPORATION
750 ROUTE 73 SOUTH
SUITE 202 A
MARLTON, NJ 08053

    *On behalf of Defendants Joseph Dixon and Robert Runkle*

**HILLMAN**, District Judge

This matter concerns Plaintiff's claims of excessive force and unlawful seizure against two police officers and municipal liability and supervisory liability against the City of Millville and its police chief, Jody Farabella.  Plaintiff claims Farabella and the municipality are liable for his injuries because of their failure to properly train the officers and for fostering customs and policies which condoned the use of excessive force.  Previously, the Court dismissed Plaintiff's claims against Millville and Farabella.[1]  The Court found that Plaintiff's claims against Millville and Farabella did not provide sufficient facts to make his claims plausible as required under applicable pleading standards.  The Court also found, however, that in consideration of the substance of Plaintiff's brief and Third Circuit precedent, Plaintiff should be granted leave to file an amended complaint.

Plaintiff filed an amended complaint, and Millville and Farabella have again moved to dismiss Plaintiff's claims against them.  For the reasons expressed below, the Court will deny Defendants' motions.

---

[1] Plaintiff had not opposed the dismissal of his claims against Farabella in his official capacity because that claim was duplicative of his claims against Millville, and Plaintiff had not opposed the dismissal of his request for punitive damages for his claims against Millville.  Those claims were dismissed with prejudice.

In his amended complaint, Plaintiff, Barry Cottman, who is African-American, claims that on June 27, 2017, he was crossing a street in Millville, New Jersey "not engaged in any unlawful activity," when Defendant Millville police officers Joseph Dixon and Robert Runkle "confronted plaintiff with one or more groundless accusations of supposedly wrongful or inappropriate conduct." (Docket No. 40 at 4.) Plaintiff claims that the officers "argued with plaintiff but plaintiff engaged in no conduct that physically threatened or injured the defendants." (Id.) Plaintiff claims, "Without reasonable provocation or justification, Defendant Officers Dixon and Runkle physically assaulted plaintiff, first seizing his person and then taking him forcefully to the ground. Dixon, who was approximately six foot three inches tall and weighed 250 pounds, restrained plaintiff by straddling him and pinning him to the sidewalk." (Id.)

Plaintiff continues, "Defend[]ant Dixon was significantly taller and heavier tha[]n Plaintiff Cottman. Defendant Dixon had effective control over Plaintiff but claimed or acted as if he was not satisfied with Cottman's degree of compliance, and so struck Plaintiff [with] a series of closed fist violent punches to the head and face, causing unnecessary and great pain, injury, bleeding, and intense fear and humiliation. Officer

3

Runkle stood by and observed but did nothing to interfere with Dixon's course of violent conduct."  (Id. at 4-5.)

Plaintiff claims that Dixon and Runkle each wrote a report about the incident.  As for Dixon, Plaintiff alleges that Dixon filed a "materially false" criminal complaint against Plaintiff stating that Plaintiff had resisted arrest by striking the officers, which is false.  (Id. at 6.)  For Runkle, Plaintiff claims that in a report authored by Runkle regarding the incident, Runkle described the incident in detail but conspicuously omitted any mention of the several closed fist strikes by Dixon to the face and head of Plaintiff.  (Id.)

A trial in the municipal court was held regarding Dixon's charges against Plaintiff.  The prosecution did not call Dixon to testify as a witness, but it did call Runkle.  According to Plaintiff, on cross-examination Runkle "admitted that he was present for the entire incident and just a couple of feet away from Cottman and Dixon, and that at no time did Plaintiff Cottman kick, punch, strike or even push the officers."  (Id.) Plaintiff's amended complaint relates that the municipal court judge acquitted Plaintiff of all criminal charges, including the charge that he had resisted arrest by striking the officers. The municipal court judge also found that Dixon's complaint and the specific allegations against Plaintiff were false.  (Id.)

Plaintiff's amended complaint additionally relates that the

4

incident "elicited on the spot complaints" from Plaintiff's mother, who "was also arrested for complaining and was charged with a criminal offense." (Id. at 7.) The municipal court dismissed that charge with prejudice, concluding that there was no criminal offense on her part.[2] Plaintiff claims that his mother complained to internal affairs and there was "a purported investigation," which lead to "an exoneration of the officers," which was a "sham, and reflects at best a deliberate and willful blindness to the police misconduct that has occurred." (Id.)

Plaintiff has asserted claims pursuant to 42 U.S.C. § 1983 and its state law counterpart, the New Jersey Civil Rights Act ("NJCRA"), N.J.S.A. 10:6-2, et seq.[3] Plaintiff claims that the defendant officers used excessive force and unlawfully restrained him in violation of the Fourth and Fourteenth Amendments (Counts One, Two and Five). Plaintiff also claims that the Defendant Police Chief Farabella and the City of

_____

[2] Plaintiff's mother is not a plaintiff in this matter.

[3] The NJCRA has repeatedly been construed as analogous to § 1983, and NJCRA claims are therefore analyzed under the legal framework applicable to § 1983 claims absent clear state law indicating a particular claim is to be analyzed distinctly from § 1983. Valles v. Cumberland County, 2019 WL 4051858, at *6 (D.N.J. 2019) (citing Trafton v. City of Woodbury, 799 F. Supp. 2d 417, 443-44 (D.N.J. 2011)). Just like § 1983, the NJCRA is a means of vindicating substantive rights and is not a source of rights itself. Gormley v. Wood-El, 93 A.3d 344, 358 (N.J. 2014).

Millville are liable for his injuries because of their failure to properly train the officers and for their fostering of customs and policies which condone the use of excessive force (Counts Three and Four).

Plaintiff's claims against Farabella and Millville are recounted in a separate section of his amended complaint. (Docket No. 40 at 9-39.) Plaintiff explains that in a sixteen-month investigation from 2017 through November 2018, the Newark Star Ledger and NJ Advance Media for NJ.com (collectively referred to as "NJ.com") compiled data based on New Jersey police use of force reports received through public records requests and published a series of articles referred to as The Force Report. The Force Report revealed that in Dixon's first three-plus years as a police officer for the City of Millville, he reported using force more frequently than any other police officer in the State of New Jersey, and over the studied five-year period of 2012 through 2016, Dixon's 58 instances in which he reported using force ranked him third statewide behind two other officers from different police departments who had 62 and 59 such instances of reported use of force.

The Force Report further found that Dixon's 58 use of force incidents in his first four years after completing police academy training yielded an average of more than one incident per month, while more than 17,000 New Jersey officers who

reported using force over a similar period averaged less than one incident per year.

Plaintiff's amended complaint relates that The Force Report revealed that Millville Police Officer Jeffrey Proffit, who reported using force 36 times during the same period - second to Dixon's 58 - was indicted in February 2017 for seven counts of assault or abuse of force against various citizens of Millville. That indictment was four months before Dixon's use of excessive force against Plaintiff.  Proffit ultimately entered a guilty plea to third degree aggravated assault in January 2020.

Plaintiff claims that until Proffit was indicted, Farabella and the Millville Police Department had never found any complaint against Proffit to be "substantiated."  Moreover, Plaintiff claims that at no time prior to Plaintiff's encounter with Dixon and Runkle in June 2017 had the Millville Police Department's internal affairs section sustained any complaint for excessive force against any officer.  Plaintiff relates that NJ.com reported that of the 39 excessive force complaints filed against police officers in the City of Millville from 2012 through 2016, not one complaint was substantiated.

Plaintiff claims that the Cumberland County grand jury's indictment of Proffit in February 2017 on multiple counts of assault against citizens or arrestees placed Chief Farabella, the police department, and the municipality on clear notice that

the internal affairs system was ineffectual, and that its police officers were employing excessive force against the citizenry. Plaintiff claims that despite such notice, Farabella and Millville did nothing - they did not change their internal affairs procedures or their training, and they did nothing to prevent continuing administrations of excessive force by members of the police department, which resulted Plaintiff's injuries in June 2017.

More specifically to Dixon, Plaintiff claims that the use of force reports filed by Dixon were reviewed by the department, and some by Farabella, which also put them on notice regarding his significant use of force when compared to other officers, including Proffit.  Additionally, in response to The Force Report, which was published after Plaintiff's encounter with Dixon, Plaintiff claims that Farabella told NJ.com that Dixon was "an example of a fine officer" who has never been the subject of a substantiated excessive force complaint, and Farabella nominated Dixon for a Public Safety Officer Medal of Valor.  Plaintiff further claims, however, that Farabella refused to reveal the number of excessive force complaints that had been filed against Dixon.

Plaintiff also claims that The Force Report revealed irregularities between Dixon's use of force reports and what

actually occurred.[4]  For example, for an incident involving Audra

Capps, Dixon filled out a use of force report that stated he

only restrained her and Capps was not injured.  A video of the

incident showed, however, that while Dixon was trying to

handcuff 100 lbs. Capps, she attempted to take a step back from

Dixon, and Dixon placed Capps in a headlock, lifted her off the

ground, swung her over his hip, and slammed her face-first into

the ground, breaking several of her ribs.[5]

Similarly, Plaintiff claims a citizen's cell phone video of

his encounter with Dixon was put on the internet a few days

---

[4] Plaintiff's complaint relates that State investigators for the
Office of Public Integrity and Accountability investigated and
studied Millville's police department as of 2019, and OPIA's
investigation revealed that Dixon prepared 80 use of force
reports during his five years as a Millville police officer.

[5] The Capps incident occurred on February 25, 2018.  Capps filed
suit against Dixon, Farabella, and the City of Millville on May
1, 2019.  See CAPPS v. DIXON, 1:19-cv-12002-RMB-AMD.  Another
action with similar claims, but not described in Plaintiff's
complaint here, is also pending in this District.  See JOYCE v.
DIXON, 1:20-cv-01118-RMB-AMD (filed on January 31, 2020,
concerning a March 24, 2018 incident of alleged excessive force
by Dixon).  The Joyce complaint states that on September 5,
2019, the OPIA sent a letter to Dixon, notifying him that he was
a target of a State Grand Jury investigation into allegations of
official misconduct, assault, and falsifying or tampering with
public records relating to his conduct in the course of his
employment Millville Police Officer.  (1:20-cv-01118-RMB-AMD,
Docket No. 1 at 5.)  The Joyce complaint further states that on
November 9, 2019, Dixon pleaded guilty to two counts of third-
degree aggravated assault for the Capps and Joyce incidents.
(Id.)  As part of his guilty pleas, Dixon was required to agree
to a lifetime ban on public employment, and he will never be
able to serve as a police officer in the State of New Jersey in
the future.  (Id. at 6.)

after, and it shows that Plaintiff did nothing to resist arrest, which is what Dixon falsely stated in his report.  Plaintiff claims that the video actually shows that Dixon straddled Plaintiff and inflicted four vigorous punches to the side of Plaintiff's face and head while he was pinned to the sidewalk by Dixon's weight.

Plaintiff's complaint further details various actions by Dixon during his time as a Millville police officer.  (Docket No. 40 at 18-24.)  Specifically related to the timeframe of Plaintiff's encounter with Dixon, Millville police department Sgt. Redden prepared the evaluation of Dixon from January 1, 2017 through November 1, 2017, where he noted the number of traffic summonses, arrests and reports issued by Dixon, but he did not include any numbers about excessive force incidents, and Redden's evaluation of Dixon was positive.

Plaintiff's complaint further details the OPIA investigation, which revealed that prior to a 2019 policy change, the Millville police department's review of use of force reports was perfunctory, it never involved any audio or video review, it constituted a one-page template that was filled in by the officer involved in a particular incident, and a supervisor would have no way of actually knowing that a UOF form was accurate and complete just by looking at the document prepared by the submitting officer.  Additionally, the OPIA revealed that

Dixon had a reputation in the department for punching people.

Plaintiff's complaint continues with allegations of how Farabella "had Dixon's back." Plaintiff's complaint alleges that even though Farabella knew of Dixon's tendencies to use excessive force, and allegedly spoke to Dixon on some occasions, Farabella did nothing meaningful to curb Dixon's conduct or the excessive use of force by Proffit and the Millville police department as a whole. Plaintiff claims that Farabella took complete responsibility for the management of the police department and of the Internal Affairs Unit.

Plaintiff claims that in Farabella's role as policymaker and supervisor for the Millville police department, Farabella acted with deliberate indifference to the consequences, and he established and maintained policies, practices, and customs regarding the un-checked use of excessive force by Dixon and the entire police department. Plaintiff also claims that Farabella failed to train and supervise the Millville police officers so that they would not engage in excessive force, and they would otherwise fail to perform effective internal affairs procedures to curb the use of excessive force.

Farabella and the City of Millville have again moved to dismiss Plaintiff's claims against them. Defendants argue that Plaintiff's allegations that Defendants "did not do enough" with regard to Dixon fail to show the requisite deliberate

indifference and fostering of a custom of excessive force to maintain his claims against them.  Plaintiff has opposed Defendants' motions.

## DISCUSSION

**A.    Subject Matter Jurisdiction**

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a).

**B.    Standard for Motion to Dismiss**

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005).  It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ."  Bell Atl. Corp. v.

*Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (citations omitted) (first citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957); *Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994); and then citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

To determine the sufficiency of a complaint, a court must take three steps: (1) the court must take note of the elements a plaintiff must plead to state a claim; (2) the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 664, 675, 679 (2009) (alterations, quotations, and other citations omitted).

A district court, in weighing a motion to dismiss, asks "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." *Twombly*, 550 U.S. at 563 n.8 (quoting *Scheuer v. Rhoades*, 416 U.S. 232, 236 (1974)); *see also Iqbal*, 556 U.S. at 684 ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) ("*Iqbal* . . . provides the final nail in

the coffin for the 'no set of facts' standard that applied to federal complaints before Twombly."). "A motion to dismiss should be granted if the plaintiff is unable to plead 'enough facts to state a claim to relief that is plausible on its face.'" Malleus, 641 F.3d at 563 (quoting Twombly, 550 U.S. at 570).

### C. Analysis

For a claim against a municipality under § 1983, a municipality cannot be held liable under a theory of *respondeat superior*, but instead a municipality may be liable under § 1983 "if the plaintiff identifies a municipal 'policy' or 'custom' that was the 'moving force' behind the injury." Jewell v. Ridley Township, 497 F. App'x 182, 185 (3d Cir. 2012) (quoting Monell v. Dept. of Social Servs. of City of N.Y., 436 U.S. 658, 691 (1978)). A policy exists "when a decision-maker with final authority issues an official proclamation, policy, or edict." Noble v. City of Camden, 112 F. Supp. 3d 208, 221 (D.N.J. 2015) (internal quotations and citations omitted). "[A] custom may be established by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." Id. (internal quotations and citations omitted).

With regard to Farabella, there are two theories of supervisory liability under which he may be found liable.

First, Farabella may be found liable if he "established and
maintained a policy, practice or custom which directly caused
[the] constitutional harm."  Santiago v. Warminster Twp., 629
F.3d 121, 127 n.5 (3d Cir. 2010).  Second,  Farabella "may be
personally liable . . . if he . . . participated in violating
the plaintiff's rights, directed others to violate them, or, as
the person in charge, had knowledge of and acquiesced in his
subordinates' violations."  Id. at 127 (quoting A.M. ex rel.
J.M.K. v. Luzerne Cty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d
Cir. 2004)); see also Capps v. Dixon, 2021 WL 2024998, at *5–7
(D.N.J. May 21, 2021) (stating that "there are some
uncertainties about the applicability of supervisory liability
in any § 1983 action, and particularly in cases concerning the
Fourth Amendment," but the Third Circuit has recognized "two
general ways in which a supervisor-defendant may be liable for
unconstitutional acts undertaken by subordinates" (citing Barkes
v. First Correctional Medical, Inc., 766 F.3d 307, 316 (3d Cir.
2014)).[6]

[6] Farabella argues that the Third Circuit has only found a claim
for supervisory liability viable in the context of the Eighth
Amendment and asks this Court to hold that supervisory liability
claims in the context of the Fourth Amendment are not similarly
viable, primarily because "Iqbal put the question of supervisory
liability to rest," and the Third Circuit caselaw cited herein
is premised on "misguided" decisions in 2004 and 1989.  This
Court declines Farabella's invitation to "correct" the Third
Circuit's precedent and hold that supervisory liability in the
context of Fourth Amendment excessive force claims is not viable

Defendants argue that Plaintiff's municipal liability and
supervisory liability claims fail because: (1) Plaintiff has not
alleged a sustained finding of the use of excessive force
against Dixon or Runkle prior to their encounter with Plaintiff
which would put Defendants on notice of those officers' actions
and trigger the need for a change in custom, policy, or
training; (2) Plaintiff does not articulate a procedure required
in New Jersey to review use of force reports that Defendants
failed to follow; (3) Plaintiff has not shown that the sheer
volume of Dixon's use of force reports when compared to other
officers in Millville or New Jersey as a whole were "abnormal"
and not "justified"; (4) Plaintiff pleads himself out of his
claims because he admits that Farabella talked with Dixon about

---

after Iqbal. Farabella also contends that even if such a theory
of liability is viable, he is entitled to qualified immunity.
The determination of Farabella's entitlement to qualified
immunity is premature at this time based on the content of
Plaintiff's complaint. See Shoffler v. City of Wildwood, New
Jersey, 2018 WL 3218681, at *3 (D.N.J. 2018) (citing Thomas v.
Independence Twp., 463 F.3d 285, 291 (3d Cir. 2006) (quotations
and other citations omitted) (denying the defendant's motion to
dismiss the complaint based on qualified immunity, explaining
"Qualified immunity is immunity from suit rather than merely a
defense to liability and should thus be resolved as early as
possible; however, it is generally not appropriate for
disposition on a motion to dismiss. The qualified immunity
analysis involves a fact-intensive inquiry that is generally
ill-suited for resolution at the pleadings stage. . . . [I]t is
generally unwise to venture into a qualified immunity analysis
at the pleading stage as it is necessary to develop the factual
record in the vast majority of cases. As a result, qualified
immunity will be upheld on a 12(b)(6) motion only when the
immunity is established on the face of the complaint.").

his actions and he was being monitored, which proves that Defendants were not acting with deliberate indifference; and (5) Plaintiff's claims boil down to his contention that the City of Millville and Farabella did not do a good enough job monitoring Dixon's use of force and Defendants could have done more, which is not enough to establish municipal or supervisory liability.

Defendants' arguments are misplaced in the context of assessing the plausibility of Plaintiff's claims, which are based on facts the Court must assume to be true. Although some of Dixon's numerous uses of force may not have been excessive, Farabella and other supervisors may have spoken with Dixon once or twice about his actions, prior to the June 2017 incident with Plaintiff no excessive force complaint had been sustained against Dixon, and New Jersey did not have a formal procedure to review use of force reports, Plaintiff's amended complaint details in-depth: how Dixon's use of force during a time period before the June 2017 incident was significantly greater than any other officer in Millville and the entire state;[7] it was well-

---

[7] Defendants argue that they are unaware of any court that has relied on use of force reports that did not result in sustained civilian complaints as a basis for establishing a deliberate indifference to a pattern or practice of excessive use of force. Even accepting that premise as valid, Plaintiff's claims against Defendants are not solely based on the number of Dixon's use of force reports. Moreover, as observed by the Court, Plaintiff has alleged facts to support Plaintiff's contention that Defendants' failure to sustain any citizen's complaint is by itself deliberate indifference. In other words, Defendants'

known in the Millville police department that Dixon had a predilection for punching people in the face; Farabella often defended and praised Dixon; the Millville police department, helmed by Farabella, failed to conduct any meaningful review of use of force reports, regardless of a formal review procedure set by the state; a fellow officer, Proffit, who was second to Dixon in his use of force, was indicted four months before Dixon's use of excessive force against Plaintiff for seven counts of assault or abuse of force against citizens of Millville, which shows additional notice of supervision and training failures; and Defendants never sustained one citizen's complaint about Proffit, Dixon or any other officer's excessive use of force, not because they did not use excessive force, but because they intentionally buried their head in the sand or deliberately sided with Dixon and the other officers.[8]

---

alleged failure to properly review use of force reports and citizen complaints caused Dixon's and other officers' conduct to go unchecked. Plaintiff alleges the volume of use of force reports by Dixon and Proffit is the smoke, and the ultimate indictments of Dixon and Proffit, and Dixon's alleged assault on Plaintiff, Capps, Joyce, and others, is the fire. Plaintiff alleges that Defendants deliberately failed to temper the smoke of which they were aware, resulting in the fire that injured Plaintiff.

[8] Allegations that an offending officer was the subject of similar prior complaints, of which the policymaker was aware, can support an inference that the policymaker tacitly had notice of and tacitly condoned the use of excessive force. Zampetis v. City of Atlantic City, 2016 WL 5417195, at *5 (D.N.J. 2016) (citing Argueta v. U.S. Immigration and Customs Enforcement, 643

Defendants primarily argue that to prove his claims against them, Plaintiff must show that their actions amounted to deliberate indifference, and Plaintiff has only described their imperfect actions where perfection is not the standard. The Court does not disagree with Defendants that to be successful on a municipal liability and supervisory liability claim, a plaintiff must establish that the municipality or supervisor acted with deliberate indifference, and that negligence is not sufficient. As the Supreme Court set forth "in Monell and ha[s] repeatedly reaffirmed, Congress did not intend municipalities to be held liable unless deliberate action attributable to the municipality directly caused a deprivation of federal rights." Board of County Com'rs of Bryan County, Okl. v. Brown, 520 U.S. 397, 415 (1997).

Here, at this stage of the case where Plaintiff does not have to prove his claims, but simply plead evidence to make his claims plausible, Plaintiff has more than sufficiently pleaded

_____

F.3d 60, 74 (3d Cir. 2011) (noting that "the typical 'notice' case seems to involve a prior incident or incidents of misconduct by a specific employee or group of employees, specific notice of such misconduct to their superiors, and then continued instances of misconduct by the same employee or employees"); Beck v. City of Pittsburgh, 89 F.3d 966 (3d Cir. 1996) (holding that five complaints of excessive force against the officer who used excessive force against the plaintiff, which had been transmitted through the chain of command to the policymaker-chief of police were sufficient to show that the policymaker knew of the officer's violent behavior)).

facts to support his claims that Farabella and the City of Millville had notice and "consciously disregarded an obvious risk that the officer[s] would subsequently inflict a particular constitutional injury," and this deliberate indifference caused the officers to use excessive force on Plaintiff. Brown, 520 U.S. at 411; Connick, 563 U.S. at 58-62. Plaintiff's claims against Farabella and the City of Millville may proceed. Cf. Capps v. Dixon, 2021 WL 2024998, at *5-7 (D.N.J. May 21, 2021) (denying the defendants' motions to dismiss, finding that the plaintiff sufficiently pleaded her supervisory liability claim against Farabella, and finding that "Capps has sufficiently alleged that Farabella either knew or should have known that Dixon received use of force complaints at a rate far higher than other officers in the department, and that whatever measures he took to correct this issue was insufficient. Thus, dismissal of Capps's Monell claims against Millville is unwarranted at this time.").

## CONCLUSION

For the reasons expressed above, Defendants' motions to dismiss Plaintiff's claims against them will be denied. An appropriate Order will be entered.


Date: __June 28, 2021__       ___s/ Noel L. Hillman___
At Camden, New Jersey      NOEL L. HILLMAN, U.S.D.J.